# Floyd et al. v. Blair et al.

March 7, 1950.

R. C. Tartar, Judge.

H. K. Spear and E. R. Denney for appellants.

J. S. Sandusky, Fritz Krueger and Gladstone Wesley for appellees.

JUDGE HELM—Affirming.

On January 30, 1948, S. P. Floyd died testate, a citizen and resident of the Delmer section of Pulaski County. He left surviving him as his only heirs the parties to this action. His son, appellant Ensil Floyd, was made executor of his will. On April 7, 1948, Ensil Floyd and others filed this action naming his heirs, and alleging that at the time of his death S. P. Floyd was the owner in fee simple of three tracts of land, which were described, on the waters of Fishing Creek in Pulaski County, and praying that the lands be sold and the proceeds, after payment of costs, be divided among the heirs according to their several interests. This petition was verified by Ensil Floyd.

On June 17, 1948, at their request, the names of Ensil Floyd and his wife, Ella Floyd, were stricken from the record as parties plaintiff. On the same day Ensil Floyd and his wife filed an intervening petition setting out that S. P. Floyd was, at the time of his death, the owner in fee simple of the tracts of land described in the original petition, with the exception of 59 acres described in the intervening petition, and alleging that Ensil Floyd is in possession of and has the fee simple title to the 59-acre tract, and praying that the land described in the original petition, with the exception of the 59-acre tract, be sold and distributed and the proceeds divided among the plaintiffs and the defendants and the intervening petitioners as their interest may appear, and that the intervening petitioner, Ensil Floyd, be adjudged to be the owner in fee simple of the 59-acre tract, and that it "be stricken and excluded from the three tracts of land as set out * * * in plaintiffs' petition."

At a trial the jury found against the intervening petitioners. The court adjudged that the intervening petition of Ensil and Ella Floyd be dismissed, and adjudged that the heirs of S. P. Floyd are the owners of the tract described in the intervening petition. The intervening petitioners appeal.

Appellants assign as errors: (1) The court erred in failing to sustain appellants' motion for a directed verdict; (2) incompetent and prejudicial evidence was introduced over appellants' objection and exception; (3) the trial court erred in failing to sustain appellants' motion to set aside the swearing of and to discharge the jury and continue the case; and (4) the instructions given by the court were erroneous.

For appellant it is shown that Ensil Floyd, 66, is a son of S. P. Floyd. He claims to be the owner of the 59-acre tract of land in dispute. He introduced deeds from Louisa Sharp, William H. Floyd, Thomas D. Floyd, and S. P. Floyd for a tract of land formerly owned by Jane Floyd, mother of the grantors. Ensil says he has been in possession of and has claimed this land ever since he bought it. He joined in the original suit to sell this tract; he later had his name stricken and then filed an intervening petition; he had it all put in the original suit because "I thought I could have the land surveyed and sell it all together and collect what I had a deed for." He had it all surveyed together. He told his first lawyer, Judge Kennedy, who prepared and filed the original petition, that he wanted to sell it all together. When he found he couldn't sell it all together and take out his part, he "had Claude Jasper go and survey the land" again. Ensil said, "I leased this land * * * to my father his lifetime for $1,000. He was to pay the taxes and use the land as he seen fit for his lifetime. Then it was to be my land." For twenty years before his father died he did not pay any taxes on this tract, and did not receive any of the proceeds from it. Asked if the "rest of the heirs helped pay the taxes," he said, "No, my father paid them and collected the proceeds off of the land."

Claude Jasper, surveyor, made a plat of the 59-acre tract described in appellants' intervening petition. Previously Ensil had had him survey "it all" and furnish Judge Kennedy the description of the plat. While Jasper was at the clerk's office looking for the deeds, Ensil said, "Daddy give him $1,000 and walked off. He said he didn't want no deed."

Grant Taylor stated that he had bought a part of the 59-acre tract from Ensil in 1928 or 1929. T. L. Bland stated that he had bought part of the 59-acre tract from

Ensil in 1928. A neighborhood road goes through the part he bought. After he bought it he wished to buy more land in order to do away with two gates on the road. He asked Ensil if he had sold his land that joined Bland, and Ensil said, "Yes, sir. I let Pa have it."

Clyda Sharp, daughter of S. P. Floyd, stated that she is acquainted with the 59-acre tract in controversy. Ensil "visited us." She never saw him on the 59-acre tract. Ensil "never did tend any of the 59-acre tract." Her father received the proceeds of this tract from 1929 until he died. During that time Ensil did not pay any taxes on it, or receive any proceeds from it. By avowal it is shown that Clyda Sharp, who lived at her father's home, found a deed from Ensil Floyd and his wife to her father, among her father's papers, for the 59-acre tract in dispute a few days after her father had died. The deed purported to be signed by Ensil and his wife. She read the deed "from start to finish" after her father died. The deed showed two payments—a $200 and an $800 payment. Mendel Baker had written it and Ensil and his wife had signed it. She first saw this deed "shortly after it was made."

John Floyd, a cousin of S. P. Floyd, knew the tract in question. After the death of S. P. Floyd he and Ensil had a conversation about the tract in dispute. Ensil told him, "I sold my Pa land for $1,000, and made him a deed. He paid me $1,000. Who will this land fall to?" Later on John was summoned. He asked Ensil why he had summoned him; Ensil told him he didn't, it was his sister. "I says, do you know what she wants with me? He said, 'I guess its about that land I sold my Pa and made him a deed and later on I bought the land back and he didn't make me no deed. The land, all of it, fell back to me.' " Bob Hislope, one of the appraisers of the estate of S. P. Floyd, knew the land in dispute. While they were surveying it, Ensil told him he hadn't been on it "but two or three times since he moved from there."

Ensil, recalled, said he and his father bought a tract of land together and divided it and "this 59 acres is my part of the 100-acre tract we bought and divided."

Claude Jasper, recalled, said that Ensil was present when he first went down to survey the land prelim-

inary to bringing the suit. He went around the land, including this tract. Ensil at that time did not say anything about owning the tract in dispute.

Eltie Richardson stated that after the death of S. P. Floyd he was talking with Ensil, whom he had known practically all his life, about the tract in dispute. Ensil told him, "We can't find no deed for the disputed land. * * * I'm going to hold it all if they just fool with me."

Ralph Z. Sharp, 31, was present when a survey of the tract in controversy was made in 1929. Ensil hired him to help make the survey. Ensil and S. P. Floyd were present. Asked if Ensil and S. P. Floyd had any conversation about what the purpose of the survey was, he stated, "They was selling it." Asked who was selling it, he said, "Ensil Floyd selling it to S. P. Floyd." He received that information from S. P. and Ensil Floyd.

Lucille Dunagan said she lived in the house with S. P. Floyd before his death. She is a daughter of Clyda Sharp; Tera Dunagan is her husband. After S. P. Floyd died, she saw a deed from Ensil Floyd and Ella Floyd to S. P. Floyd. It was in her grandfather's chest of drawers. Later Ensil Floyd came and spent a night there. After that she looked for the deed but could not find it. Tera Dunagan says he read a deed from Ensil and Ella Floyd to S. P. Floyd for the land in question. It was on a printed form, "the calls and things" were filled in by the clerk, the acknowledgment was taken by Mendel Baker, deputy clerk of Pulaski County. He didn't remember the date exactly, "it was in 1929."

This was an action in equity. We find no order transferring this branch of the case to the ordinary docket. The court did submit to a jury the question of adverse possession, telling them, in substance, that they should find for the intervening petitioner unless they should believe that the land in controversy had been in the adverse possession of S. P. Floyd for more than 15 years, or unless they should believe that the possession of the land in controversy by S. P. Floyd was under a permissive contract or agreement with the intervening petitioner. These instructions were substantially correct. See Stanley on Instructions, sections 60 and 63. The jury found against the intervening petitioner.

Our Civil Code of Practice, section 606(2), provides: "* * * no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done * * * by one who is * * * dead when the testimony is offered to be given * * *."

There is complaint as to the admission of incompetent evidence. There is much confusion in the record as to this. Ensil Floyd testified that he had leased the tract in dispute to his father for his lifetime. The court, having in mind the above section of the Civil Code of Practice, admonished the jury not to consider this testimony because it related to a transaction with a person now dead. Although this evidence was withdrawn from the jury, later in the trial Ensil Floyd testified to substantially the same thing without objection.

A number of witnesses testified to seeing a deed of 1929 for the tract in dispute from Ensil Floyd and wife to S. P. Floyd among his papers after his death. The objection to that evidence was sustained on several occasions and avowals were made. Later, this evidence, in substance, was admitted without objection. It was, it appears, not in conflict with the above section of the Civil Code of Practice. The chief basis of appellants' request to set aside the swearing of the jury was the admission of evidence as to witnesses seeing the deed after the death of S. P. Floyd. The court properly overruled appellants' motion to set aside the swearing of the jury.

Appellants complain that the trial court overruled their motion for a directed verdict. As a basis for this they say, "The answer of the appellees is nothing but a negative pregnant," and cite Flinn v. Blakeman, 254 Ky. 416, 71 S. W. 2d 961. In his intervening petition, Ensil Floyd alleged that S. P. Floyd was, at the time of his death, the owner of all the lands described in the petition, except the 59-acre tract described in the intervening petition, and alleged that he was in possession of the 59-acre tract at the time of the death of S. P. Floyd, and that he is the owner of that tract. The other heirs filed answer denying the allegations of his intervening petition, and then affirmatively averred that they, with Ensil Floyd, are the owners of that tract and all of the other tracts described in the original petition. Appel-

lants filed their reply denying this affirmative allegation. It is apparent that appellants' argument as to negative pregnant is without merit.

We do not find any errors in the record substantially prejudicial to the rights of appellants. On the basis of all the testimony, facts and circumstances of this case, we believe the trial court reached the correct conclusion.

The judgment is affirmed.